IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| RONALD L. MELTZER | § | CASE NO: 05-95351 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| RONALD L. MELTZER | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3156 |
| | § | |
| MARK RAMERT, *et al* | § | |
| Defendant(s) | § | |

**MEMORANDUM OPINION**

In October 1999, Ronald Meltzer, ("Debtor"), executed a promissory note (the "Note") to the order of Mark Ramert ("Ramert") in the amount of $30,800.[1] To secure payment on the Note, Debtor executed a Deed of Trust on real estate at 12623 Briar Patch Road, Houston, Texas 77077 ("Briar Patch"). The Deed of Trust listed Peter Workin ("Workin") as trustee and Mark Ramert as beneficiary.

Debtor filed a chapter 13 bankruptcy petition on December 5, 2005. On his schedule F, Debtor listed Kathy Ramert[2] as a creditor holding an unsecured nonpriority claim. On December 6, 2005, Mark and Kathy Ramert ("Ramert"), without knowledge of Debtor's bankruptcy filing, foreclosed on the lien. William Pendergraft ("Pendergraft") was the substitute trustee in the foreclosure on Briar Patch. The bankruptcy case was voluntarily converted to a case under chapter 7 on March 23, 2006.

---

[1] The note was later amended to increase the principle from $30,800 to $35,800.
[2] Mark and Kathy Ramert divorced since execution of the loan. The property is now owned in equal shares by Mark and Kathy individually.

1

On February 7, 2006, Debtor filed this adversary proceeding. Debtor asserts Briar Patch is and always has been his homestead. As his homestead, Debtor asserts that the lien violates the Texas Constitution and the Texas Property Code which bar liens on homesteads except for specifically allowed encumbrances. Debtor asserts the lien is invalid and, therefore, the foreclosure sale was invalid. Debtor has also brought a claim for wrongful foreclosure.

It is a well accepted principle in Texas that only certain liens are allowed to attach to homestead property. *See* TEX. CONST. Art. XVI, § 50(a); TEX. PROP. CODE ANN. § 41.001(a). If a party has attempted to attach a lien to homestead property that is not authorized under the Texas Constitution and the Texas Property Code, the lien will be found invalid. *See Commonwealth Land Title Co. v. Nelson,* 889 S.W.2d 312, 321-22 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Therefore, any foreclosure based on the lien will be found ineffective. *See Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 63, 634 (Tex. 1987).

A hearing was held on January 24, 2007. The Court's findings as to the validity of the lien, the effect of the foreclosure and whether wrongful foreclosure occurred are set forth below.

To determine if the lien is valid, the Court heard testimony concerning whether the property is Debtor's homestead and whether the funds obtained by granting the lien were used for an encumbrance as allowed by the Texas Constitution and the Texas Property Code.

*Homestead Issues*

Under Texas law, a family or single adult is entitled to one homestead consisting of the land in an amount specified by law, and any improvements on the land. *See* TEX. PROP. CODE ANN. § 41.002. The question of whether property is a homestead is a fact-intensive inquiry considering the owner's concurrent usage and intent to claim the property as a homestead. *Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158-59 (Tex. App.—Dallas 1992, writ denied).

2

To establish homestead rights, "a party must show 'overt acts of homestead usage and intention on the part of the owner to claim the property as homestead.'" *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied) (citing *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14 Dist.] 1983, writ ref'd n.r.e.)). "After the party has established the homestead character of the property, the burden shifts to the creditor. . . to disprove the continued existence of the homestead." *Id.* (citing *Lifemark Corp.*, 655 S.W.2d at 314).

Debtor testified that at the time he signed the lien documents, he was fully aware that the documents placed a lien on his homestead. However, Debtor asserted that he was told the lien was merely to protect Ramert in the event of Debtor's death. The deed of trust does not contain any disclaimer of homestead protection. The validity of the lien, as it may relate to homestead exemptions, Debtor asserts, was never discussed.

In support of his contention that the property is his homestead, Debtor presented his bankruptcy schedules, both from his chapter 13 and chapter 7 bankruptcy petitions. On the schedules, Debtor listed Briar Patch as his homestead. Debtor also presented records from the Harris County Appraisal District from 1998 through 2004 showing that Debtor has been receiving a homestead exemption on the Briar Patch address.[3] Debtor testified that he has neither abandoned nor rented the property since moving into Briar Patch in 1998 and that the only lien holder is Countrywide home loans who advanced purchase money for the property.

Debtor was questioned regarding the notice address listed on the deed of trust. On the deed of trust, rather than listing the Briar Patch property as his mailing address, Debtor listed 510

---

[3] Debtor testified he did not receive a homestead exemption in 2005 because of the foreclosure sale. However, Debtor testified that he has been paying all mortgages, insurance and ad valorem tax payments on the property since the foreclosure sale.

Wycliffe, Houston, Texas 77079 ("Wycliffe").  Upon questioning, Debtor claimed that Wycliffe was his business address and that he frequently received personal mail at this address.

Debtor also presented testimony from Renee Shapiro ("Shapiro").  Shapiro testified that Debtor had dated her sister-in-law.  Shapiro asserted that she has known Debtor for over 20 years and has had continuous contact with him during that time.  From her personal knowledge she testified that she knew he has lived at Briar Patch since 1998 and that even though she did not see him on a weekly basis, she frequently drove by his home and would notice his vehicle.  Additionally, Shapiro testified that her granddaughter and Debtor's granddaughter would frequently play together and Shapiro has heard the children discussing where they wanted to play—at Shapiro's house or at Debtor's.

Ramert's counsel questioned Debtor as to whether Debtor had told Ramert that the property was rental property.  Debtor denied making such a statement.

When Ramert was questioned as to whether Debtor made the statement that the property was rental property, Ramert stated that when he decided to loan the money to Debtor, he contacted Workin, trustee under the deed of trust, and told Workin that he wanted to loan money secured by Briar Patch.  Ramert asserted that Workin stated he could not attach a lien on Briar Patch if Briar Patch was a homestead.  Ramert stated he then spoke to Debtor and Debtor told Ramert to tell Workin that the property was rental property.  Ramert, personally, however, had no knowledge of where Debtor resided.  Ramert further stated that Debtor never made an affirmative representation that Briar Patch was rental property.  Debtor only told Ramert to tell Workin that Briar Patch was rental property.

After considering the testimony, the Court finds that Debtor has met his burden of showing overt acts and a clear intention to claim Briar Patch as his homestead.  *See Wilcox*, 103

S.W.3d at 472. Shapiro's testimony demonstrated that Debtor has been continuously living in the property and using it as his homestead. Additionally, the Court finds Debtor evidenced his intent to claim the property as his homestead on both his bankruptcy schedules and on the Harris County tax records.

Once Debtor established the homestead character of the property, Ramert then had the burden of disproving this claim. The Court finds Ramert did not meet this burden. While there was conflicting testimony as to the fact that Debtor made a statement that the property was rental property, the evidence supports a finding that the property was not, in fact, used as rental property.

Additionally, the Court finds any representation made by Debtor that the property was his homestead is irrelevant to these proceedings. Under Texas law it is a well-settled principle that "[n]o estoppel can arise in favor of a lender or encumbrancer who has attempted to secure a lien on homestead property that is in actual use and possession of the homestead claimant, based solely upon declarations, whether written or oral, which state to the contrary."[4] *Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied) (citing *Sanchez. v. Telles*, 960 S.W.2d 762, 770 (Tex. App.—El Paso 1997, writ denied)); *Estate of Montague v. Nat'l Loan Investors, L.P.*, 70 S.W.3d 242, 247 (Tex. App.—San Antonio 2001, pet. denied) ("If the claimant owns only one piece of property which the claimant occupies and uses as his home, the claimant is not estopped to set up the homestead exemption notwithstanding declarations,

---

[4] *See Lincoln v. Bennett*, 156 S.W.2d 504, 506 (Tex. 1941) (citing *Equitable Mortgage Co. v. Norton*, 10 S.W. 301 (Tex. 1888)). ("The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution. If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution.").

whether written or oral, which state to the contrary."); *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995) (quoting *In re Bradley*, 960 F.2d 502, 509 (5th Cir. 1992)) ("A homestead claimant is not estopped to assert his homestead rights in property on the basis of declarations made to the contrary if, at the time of the declarations, the claimant was in actual use and possession of the property.").[5]

*Use of Funds*

Once Debtor has met his burden that the property in question was homestead property at the time the deed of trust was executed, "the creditor has the burden to prove that the debt falls within one of the excepted debts listed in Article XVI, section 50(a)." *Chase Manhattan Mortg. Corp. v. Cook*, 141 S.W.3d 709, 713 (Tex. App.—Eastland 2004, no pet. h.) (citing *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 313 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)). The ultimate issue of whether a lien is valid in light of the asserted homestead status is a question of law. *Commonwealth Land Title Co. v. Nelson,* 889 S.W.2d 312, 321-22 (Tex.App.—Houston [14th Dist.] 1994, writ denied). No mortgage, trust deed, or other lien on the homestead is valid unless it secures a debt described in Texas Constitution Article XVI, § 50.[6] TEX. CONST. Art. XVI, § 50(a). If the lien is not authorized by the Texas Constitution, the Homestead property is protected from forced sale for the payment of any debt. TEX. CONST. Art. XVI, § 50(a); TEX.

---

[5] There are, however, two instances (neither of which are applicable in this proceeding) when a disclaimer will bar a debtor from claiming homestead rights: "(1) the debtor owned two or more noncontiguous pieces of property, any of which-but not more than one-could constitute a homestead; or (2) the property described in the disclaimer was not being used for homestead purposes." *In re McDaniel*, 70 F.3d 841, 843 (5th Cir. 1995) (quoting *In re Bradley*, 960 F.2d 502, 509 (5th Cir. 1992))

[6] Encumbrances may properly be fixed on homestead property for the following debts: (1) Purchase money for the property; (2) Taxes due on the property; (3) An owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition; (4) Refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses if the homestead is a family homestead, or from the tax debt of the owner; (5) Work and material used in constructing new improvements on the homestead if contracted for in writing and, in some instances, work or material used to repair or renovate existing improvements; (6) An extension of credit secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse, as set forth by law; and (7) A reverse mortgage.

6

PROP. CODE ANN. § 41.001(a); *Heggen v. Pemelton*, 836 S.W.2d 145 (Tex. 1992), *modified on reh'g*, (Sept. 9, 1992); *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 63, 634 (Tex. 1987) (foreclosure of the homestead is permitted on liens only specifically listed in the constitution.).

Debtor claimed that the funds he received from Ramert were for gambling debts and travel to his son's wedding. Because such debts are not listed as allowed encumbrances in the Texas Constitution, Debtor asserts that the Court should avoid the lien, declare the foreclosure was wrongful, and transfer title back to Debtor.

Debtor testified that he began gambling at the age of eighteen. By 1998, Debtor believed his gambling habit had become a "bad addiction." He stated that he had markers in Las Vegas, Louisiana and Atlantic City. This gambling addiction was supported by the testimony of Shapiro. Shapiro testified that Debtor used money he won from gambling to buy the townhouse which is the subject of this proceeding. Shapiro stated that when he purchased the townhouse she was glad Debtor was "doing something with the money" and was not "just going to throw it back at gambling."

Debtor testified that Ramert knew of his gambling problem and that he and Ramert had discussed gambling and trips to Las Vegas on multiple occasions. Further, Debtor asserted that he and Ramert had actually met in Las Vegas to gamble at the Riviera. Debtor also claimed that he had previously received a loan from Ramert, which has been paid in full, for $140,000 to pay for gambling debts.

Ramert testified that he has known Debtor for almost twenty years and has "probably lost track" of all the loans he has given to Debtor. Ramert testified that when he loaned the money to Debtor, Debtor told him he was having financial problems and the funds would be used to cover

7

taxes and gambling debts.  However, Ramert stated Debtor did not elaborate on whether the tax problems were due to income tax or property tax.  Ramert further asserted that he never relayed to Workin what financial problems Debtor was experiencing.

Ramert stated that he believed the funds were used to pay past due property taxes.  Under the Texas Constitution and Texas Property Code, an encumbrance may be fixed on homestead property for property taxes.  TEX. CONST. Art. XVI, § 50(a); TEX. PROP. CODE § 41.001(b)(2).  It is Ramert's burden to show the funds were used in a manner allowed under the Texas Constitution—for property taxes rather than, in this instance, largely for gambling debts.  *Chase Manhattan Mortg. Corp.*, 141 S.W.3d at 713.

When questioned by Ramert's counsel, Debtor stated that he has had tax liens against his property for about the last 20 years.  However, he asserted that the liens have all been paid or released and that he has never used any of the money from Ramert on the tax liens.  Debtor stated that his tax problems were due to a failure to pay both income taxes and property taxes.

The Court finds that while there was some testimony demonstrating that Debtor may have used the funds to pay taxes, there was no persuasive testimony that the funds were so used.  The testimony at the hearing largely supports Debtor's assertion that the funds were used to pay gambling debts.  Regardless, it is the creditor's burden to show the funds were used in a manner in compliance with the Texas Constitution.  Ramert failed to meet this burden.

The Court therefore finds that the lien was on Debtor's homestead and that the lien does not fall within the permitted encumbrances in the Texas Constitution and Texas Property Code.  The lien is, therefore, invalid.  As stated above, foreclosure of the homestead is permitted only in the instances specifically listed in the Texas Constitution. TEX. CONST. art. XVI, § 50; *Inwood*

8

*North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 63, 634 (Tex. 1987). The December 6, 2005 foreclosure sale was on an invalid lien. The foreclosure is therefore invalid.

*Wrongful Foreclosure:*

Debtor has also asserted a claim for wrongful foreclosure. In Texas, if the mortgagee either "(1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure process," the debtor may be able to recover for wrongful foreclosure. *First State Bank v. Keilman*, 851 S.W.2d 914, 921-22 (Tex. App.—Austin 1993, writ denied.). An implicit requirement to maintain such a claim, however, is that the plaintiff suffers an injury. *See Weiler v. United Sav. Ass'n of Texas, FSB*, 887 S.W.2d 155, 158 (Tex. App.—Texarkana 1994. writ denied) (citing *Gainesville Oil & Gas v. Farm Credit Bank*, 847 S.W.2d 655, 659 (Tex. App.—Texarkana 1993, no writ) ("[A] person who suffers loss or material injury because of irregularities in a foreclosure sale is entitled to maintain a suit for wrongful foreclosure."); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet. h.) (quoting *John Hancock Mut. Life Ins. Co. v. Howard,* 85 S.W.2d 986, 988 (Tex. Civ. App. 1935, writ ref'd) (Recovery on an action for wrongful foreclosure "is conditioned on the disturbance of the mortgagor's possession. . ."). "Where the mortgagor's possession is undisturbed, he has suffered no compensable damage." *Id.* (quoting *John Hancock Mut. Life Ins. Co.*, 85 S.W. 2d at 988-89) (finding Plaintiff not entitled to recover for wrongful foreclosure where only possible damages were the "benefit of doing business with the purchaser who allegedly was prevented from purchasing the property.").

If the plaintiff is successful in his wrongful foreclosure action, he may recover either the return of the property or damages. *UMLIC VP LLC v. T&M Sales & Envtl Sys.*, 176 S.W.3d 595, 610 (Tex. App.—Corpus Christi 2005, pet. denied) (citing *Univ. Sav. Ass'n,* 644 S.W.2d at 706;).

9

Damages are measured as "the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." *Id.* (citing *Durkay v. Madco Oil Co.,* 862 S.W.2d 14, 21 (Tex. App.-Corpus Christi 1993, writ denied) (op. on reh'g)). The burden is on the complaining party to prove the amount of indebtedness at the time of foreclosure. *Id.*; *Durkay*, 862 S.W.2d at 21 ("The plaintiff, having the burden to prove damages, must prove the amount of indebtedness at the time of foreclosure; it is an integral part of his claim for damages.").

Debtor has failed to offer evidence as to damages, including any evidence of attorney's fees for prosecuting this lawsuit. The Court, therefore, denies damages based on the theory of wrongful foreclosure. A separate judgment will issue.

Signed at Houston, Texas, on February 16, 2007.

MARVIN ISGUR
United States Bankruptcy Judge